IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON COX,

ANTWON REDMON and

HANAI ABRAHAM,

                                            COMPLAINT – JURY DEMAND

      Plaintiffs,

v.

DRUG ENFORCEMENT ADMINISTRATION;

TERRANCE C. COLE, Administrator,
Drug Enforcement Administration, in his official capacity;

AGENT JANOWICZ, DEA Agent,
Drug Enforcement Administration, in his individual capacity;

AGENT SCIRRI, DEA Agent,
Drug Enforcement Administration, in his individual capacity; and

UNITED STATES OF AMERICA,

      Defendants.

_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR INDIVIDUAL RELIEF OF RETURN OF PROPERTY AND COMPENSATORY DAMAGES**

### Introduction

1. This civil rights lawsuit asks whether the government may seize U.S. currency without any indication of criminal activity, pursuant to unlawful and unconstitutional federal agency policies or practices that violate the rights of thousands of air travelers each year.

2. In addition to seeking the return of their unconstitutionally seized cash and compensatory damages, Named Plaintiffs, Aaron Cox, Antwon Redmon and Hanai

Abraham seek declaratory and injunctive relief who have been or will be subjected to unlawful and unconstitutional cash seizure policies or practices at airports across the country.

3. The Drug Enforcement Administration ("DEA") has policies or practices of seizing cash from travelers at airports without reasonable suspicion or probable cause and based solely on the amount of cash. DEA's policy or practice violates the Fourth Amendment.

4. In June 2021, Hanai Abraham entrusted his employees, Aaron Cox and Antwon Redmon, with $15,692. and $36,800 in cash— income from sales from customers to Mr. Abraham's business, GoGadget.com—so he could deposit it into his bank account in California.

5. Aaron Cox and Antwon Redmon were flying though Detroit Metro Airport, on a connection flight, never leaving the airport terminal, on their way back to California. They intended to fly back to California with the cash, deliver to Mr. Abraham and Mr. Abraham would deposit the funds into his bank account. All flights remained within the United States of America and did not cross an international border.

6. DEA Agents allege a dog responded on Plaintiffs baggage even though no drugs were ever found. DEA pulled aside carry-on luggage solely because they observed a positive response from the dog. Plaintiffs possessed a "large" amount of cash. The DEA did not further inspect the carry-on luggage or the cash to see if it was concealing any dangerous or prohibited items.

7. Aaron Cox and Antwon Redmon did not feel free to leave and believed they was being held by the DEA. Even if the DEA Agents had told them they were free to leave, Plaintiffs could not realistically have left their carry-on luggage with their employer's cash and their other possessions. They were, in fact, effectively seized along with their luggage.

8. As determined by the DEA Agents, Aaron Cox and Antwon Redmon had no items that could threaten transportation security—weapons, explosives, or incendiaries—in their luggage or on their person. They also had no illegal drugs or any other contraband.

9. There was no indication of suspicious or criminal activity in Aaron Cox and Antwon Redmon's behavior or the way they were traveling with cash, which was on their person or in their carry-on luggage.

10. Without probable cause, the DEA agent seized Aaron Cox and Antwon Redmon's cash because it was greater than $5,000 and was thus considered a "suspicious" amount under DEA's policy or practice regarding the seizure of cash from travelers at airports.

11. DEA has continued to hold Aaron Cox and Antwon Redmon's cash since June 14, 2021, and has taken actions to permanently keep the money using civil forfeiture.

12. Neither Aaron Cox and Antwon Redmon had been arrested for or charged with any crime.

13. The initial and continued seizure of Aaron Cox and Antwon Redmon's cash, has prevented Plaintiff, Hanai Abraham, from further investing this cash.

14. Aaron Cox and Antwon Redmon's story is not unique. What happened to them illustrates the systematic policies or practices of the DEA: seizing cash from air travelers based solely on the presence of what these agencies believe to be "large" or "suspicious" amounts of cash.

15. These policies or practices of the DEA violate the Fourth Amendment.

16 On behalf of themselves and others similarly situated, Aaron Cox and Antwon Redmon bring this class-action lawsuit to recover their property and put these systematic unlawful and unconstitutional policies and practices to an end.

## Jurisdiction

17. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

18. Plaintiffs bring their class-wide statutory and Fourth Amendment claims under the Administrative Procedure Act, 5 U.S.C. §§ 701-706; the Declaratory Judgment

Act, 28 U.S.C. §§ 2201-2202; and the United States Constitution.

19. Plaintiffs bring their individual claim for the return of seized property under Federal Rule of Criminal Procedure 41(g) and this Court's general equity jurisdiction under 28 U.S.C. § 1331.

20. Plaintiffs bring their individual Fourth Amendment claim for compensatory damages under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

## Venue

21. Venue is proper in the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) and 1391(e)(1)(B) and Federal Rule of Criminal Procedure 41(g) because Defendants' unlawful and unconstitutional conduct occurred, and on information and belief continues to occur, in the City of Romulus, County of Wayne, State of Michigan (Detroit Metropolitan Airport).

## Parties

### A. Named Plaintiffs

22. Named Plaintiff Aaron Cox is an adult citizen of the United States and is a resident of the State of California.

23. Named Plaintiff Antwon Redmon is an adult citizen of the United States and is a resident of the State of California.

24. Named Plaintiff Hanai Abraham is the employer of Named Plaintiffs Aaron Cox and Antwon Redmon.

25. Plaintiffs Aaron Cox and Antwon Redmon were in possession of the $52,492 in U.S. currency that Defendants seized on June 14, 2021. Plaintiffs Aaron Cox and Antwon Redmon also had a possessory interest in the cash on the day of the seizure.

26. Aaron Cox and Antwon Redmon brings:

a. Class-wide claims for declaratory and injunctive relief on behalf of individuals whose currency, carry-on luggage, personal effects, and/or persons have been or will be

unlawfully and unconstitutionally seized by Defendants;

b. Two individual claims for the return of their seized cash, with interest, and for compensatory damages.

27. Named Plaintiff Hanai Abraham is an adult citizen of the United States and is a resident of the State of California.

28. Hanai Abraham is the owner of GOGADGET.COM business and the employer of Plaintiffs Aaron Cox and Antwon Redmon..

29. Hanai Abraham is the true owner of the $52,492. in U.S. currency that Defendants seized on June 14, 2021.

30. Hanai Abraham, with Aaron Cox and Antwon Redmon brings:

a. Three class-wide claims for declaratory and injunctive relief on behalf of individuals whose currency, carry-on luggage, personal effects, and/or persons have been or will be unlawfully and unconstitutionally seized by Defendants;

b. Three individual claims for the return of their seized cash, with interest, and for compensatory damages.

## B. Defendant Drug Enforcement Administration ("DEA")

31. DEA is a federal agency charged with enforcing the controlled substances laws and regulations in the United States. 21 U.S.C. § 878.

32. A substantial portion of DEA's activities involve the seizure of currency that it believes is connected to controlled substances, including at airports across the country.

33. Upon information and belief, DEA follows a policy or practice of seizing currency from travelers at U.S. airports without probable cause, based solely on the presence of currency on their person or in their carry-on luggage.

34. Upon information and belief, DEA follows a policy or practice of seizing currency from travelers at U.S. airports without probable cause, based solely on the presence of $5,000 or more on their person or in their carry-on luggage.

35. Upon information and belief, after seizing currency from air travelers in this manner, DEA typically attempts to initiate the civil forfeiture of the property under the Civil Asset Forfeiture Reform Act ("CAFRA").

36. Upon information and belief, DEA has been engaging in this policy or practice of seizing currency from travelers at U.S. airports without probable cause for the entirety of the period described in Plaintiffs' proposed DEA Class definition.

37. Upon information and belief, pursuant to DEA's policy or practice, one or more DEA agents seized Aaron Cox and Antwon Redmon's cash on June 14, 2021.

**C. Defendant Terrance C. Cole**

38. Defendant Cole is the current Administrator of DEA.

39. As Administrator of DEA, Cole is responsible for overseeing the operations of DEA, including the policy or practice at issue here.

40. Cole is sued in his official capacity.

**D. Defendant DEA AGENT JANOWICZ**

41. Upon information and belief, DEA AGENT JANOWICZ who, pursuant to the DEA policy or practice described above, seized Aaron Cox and Antwon Redmon's cash on June 14, 2021, in violation of their Fourth Amendment rights.

42. AGENT JANOWICZ is sued in his individual capacity pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

**E. Defendant DEA AGENT SCIRRI**

43. Upon information and belief, DEA AGENT SCIRRI who, pursuant to the DEA policy or practice described above, seized Aaron Cox and Antwon Redmon's cash on June 14, 2021, in violation of their Fourth Amendment rights.

44. AGENT SCIRRI is sued in his individual capacity pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

### F. Defendant UNITED STATES OF AMERICA

45. Defendant United States of America is the national federal government established by the United States Constitution. As such, it is subject to limitations imposed by the Constitution—including, as relevant here, the Fourth Amendment.

46. The constitutional violations at issue here involve the actions of federal agencies and employees and are therefore ultimately chargeable to the federal government itself.

## Factual Allegations

47. Mr. Abraham is a businessman living in California.

48. Mr. Abraham started a business called GOGADGET.COM

49. Mr. Abraham exhibits his products at shows around the country.

50. In 2021, Mr. Abraham had 2 employees, Aaron Cox and Antwon Redmon.

51. Mr. Cox and Mr. Redmon made sales prior to their June 14, 2021 flight.

52. The sales were a total of $52,492.00 USD

53. June 14, 2021, Aaron Cox and Antwon Redmon were flying through Detroit Metropolitan airport on their way back to California with $52,492.00 on their persons or carry-on baggage on a domestic flight.

54. Mr. Cox and Mr. Redmon were stopped by the DEA Agents.

55. The DEA Agents allege that the drug dog gave a positive response to their carry-on baggage.

56. Mr. Redmon and Mr. Cox did not consent to the search regarding their baggage nor their persons.

57. The DEA Agents conducted a search of Mr. Redmon and Mr. Cox over their objections.

58. No drugs or any other contraband were found by the DEA.

59. The only items the DEA Agents found was $52,492 in U.S. Currency in their baggage or on their person.

60. The DEA Agents seized the $52,492.00 in U.S. Currency even though Mr. Cox or Mr. Redmon even though they were not charged with a crime.

61. There was no time for Mr. Cox or Mr. Redmon to deposit the cash in a bank before their flight left, so they planned to take it with them and deliver it directly to Mr. Abrham.

62. Mr. Cox and Mr. Redmon found it extremely embarrassing to be held and questioned for approximately 60 minutes or more in front of other travelers because it appeared they had done something wrong or illegal.

### DEA seized Mr. Redmon's and Mr. Cox's cash.

63. Mr. Redmon and Mr. Cox felt like they had no choice but to comply with the DEA Agents' demands.

64. The two DEA AGENTS escorted Mr. Redmon and Mr. Cox to a less crowded area to question them.

65. Mr. Redmon and Mr. Cox did not feel free to leave even though they did not commit any crime.

66. DEA Agent Janowicz asked Mr. Cox to show him the cash in his carry-on luggage. Mr. Cox felt like he had no choice but to comply with his demands and showed him the cash.

67. Upon information and belief, DEA Agent Janowicz decided to seize the cash as soon as he saw the amount, pursuant to DEA's policy or practice of seizing currency totaling more than $5,000 when found in the possession of travelers at airports regardless of whether there is probable cause for the seizure even though they did not commit a crime nor was charged with a crime.

68. DEA Agent Janowicz then took the cash and searched the rest of Mr. Cox's belongings.

69. DEA Agent Janowicz seized all of Mr. Cox's and Mr. Redmon's cash, totaling $52,492 in U.S. currency.

70. Mr. Cox and Mr. Redmon were not arrested nor charged with any crime, and were finally permitted to board their flight to California, deeply embarrassed by their fellow passengers and other onlookers staring at them during this entire encounter because it appeared they had done something wrong or illegal.

71. Mr. Cox and Mr. Redmon received CAFRA notices for the entire $52,492. dated June 14, 2021, from DEA indicating DEA's intention to permanently keep their cash through civil forfeiture.

72. Upon information and belief, Mr. Cox's and Mr. Redmon's cash was seized and is being forfeited without any articulable reasonable suspicion or probable cause.

73. Upon information and belief, at the time of the seizure, neither Mr. Cox nor Mr. Redmon were under investigation for any criminal activity.

74. Neither Mr. Cox nor Mr. Redmon has been arrested for or charged with any crime related to or arising from any circumstances surrounding the seizure of their cash.

75. It is not a crime to travel with any amount of currency, and there are no legal requirements to report to the government that one is traveling domestically with any amount of currency.

## Individual Injuries to the Named Plaintiffs.

76. Currency is not a weapon.

77. Currency is not an explosive.

78. Currency is not an incendiary.

79. Currency is not a threat to transportation security or air travel safety.

80. Mr. Abraham has an ownership interest in the $52,492 in cash that Defendants seized and that DEA seeks to forfeit.

81. Mr. Cox and Mr. Redmon also has a possessory interest in the seized cash.

82. DEA's unconstitutional seizure of Mr. Cox's and Mr. Redmon's cash violated and continues to violate their Fourth Amendment rights to be free from unreasonable

seizures.

83. DEA's continued and ongoing seizure of Mr. Cox's and Mr. Redmon's money constitutes an ongoing injury to all three Plaintiffs

84. Throughout the time Mr. Abraham's cash has been in DEA's possession, and all three Plaintiffs have been unable to make use of their money.

85. Mr. Abraham's inability to use the seized money has resulted in ongoing pain and suffering to Mr. Abraham, including but not limited to re-investing in his business to help it grow.

86. Mr. Abraham has suffered emotional distress, pain, and suffering caused by the stress of not knowing what happened to his employees for several hours on the day of the seizure.

87. Mr. Abraham continues to suffer emotional distress, pain, and suffering caused by the ongoing deprivation of his income from his business.

88. Mr. Cox and Mr. Redmon suffered and continues to suffer emotional distress, pain, and suffering caused by the insult and humiliation of the circumstances and manner of the unlawful seizure of them and the cash.

### DEA Class Action Allegations

89. Every year, DEA conducts tens of thousands of seizures of currency, including hundreds or even thousands of seizures of currency from travelers at U.S. airports.

90. From 2009 to 2013, DEA seized over $2 billion in currency.

91. DEA made more than 80,000 seizures of currency from FY 2007 to FY 2016, which is approximately 80% of all federal seizures of currency by DOJ agencies during that period.

92. From 2009 to 2013, DEA interdiction Task Force Groups, which operate at airports and other mass transportation facilities, seized $163 million in more than 4,000 individual currency seizures.

93. DEA has operated an "airport interdiction task force" at one or more U.S. airports since at least 1975.

94. DEA sometimes refers to its airport interdiction activities as "Operation Jetway." Operation Jetway is also the name of DEA's transportation interdiction training course.

95. The Operation Jetway airport interdiction program was established in 1993 with DEA as the lead agency, to provide standardized training and to collect and analyze arrest and seizure data from federal, state, and local drug interdiction units working at airports and other mass transportation facilities.

96. In 2001, DEA collected data on Operation Jetway airport interdiction operations at 77 U.S. airports.

97. Upon information and belief, DEA now operates an Operation Jetway airport interdiction program at every major commercial airport in the United States.

98. A 2017 report by the Department of Justice Office of Inspector General ("OIG") reviewed a sample of 100 DEA currency seizures that "appeared to have occurred without a courtissued warrant and without the presence of narcotics" and "found that 85 of the 100 seizures occurred as a result of interdiction operations at transportation facilities, such as airports . . . ." Office of Inspector General, Review of the Department's Oversight of Cash Seizure and Forfeiture Activities at iii (Mar. 2017) ("2017 OIG Report"), https://oig.justice.gov/reports/2017/e1702.pdf.

99. The 2017 OIG Report found that DEA could verify that "only 29 of the 85 interdiction seizures, had (1) advanced or been related to ongoing investigations, (2) resulted in the initiation of new investigations, (3) led to arrests, or (4) led to prosecutions." 2017 OIG Report at iii.

100. Of the 85 DEA interdiction seizures reviewed by the OIG at transportation facilities, more than half of those currency seizures—46 of the 85—occurred at airports. See 2017 OIG Report at 22.

101. The 2017 OIG Report found that: "DEA agents and task force officers may also initiate contacts that lead to seizures after receiving information from airport security screeners that a large volume of currency was packaged within an individual's carry-on or checked luggage." 2017 OIG Report at 23.

102. Upon information and belief, DEA agents participating in Operation Jetway airport interdiction operations at U.S. airports follow a DEA policy of seizing any currency found that totals more than $5,000.

103. Upon information and belief, DEA follows a policy or practice of seizing currency from travelers at U.S. airports based on the presence of a threshold amount of currency that DEA considers "suspicious," regardless of whether there is probable cause.

104. Upon information and belief, DEA follows a policy or practice of seizing currency from travelers at U.S. airports based solely on whether they have at least $5,000, regardless of whether there is probable cause.

105. This policy or practice violates the Fourth Amendment's prohibition against unreasonable searches and seizures.

106. To remedy the ongoing constitutional violations caused by DEA's policy or practice, Plaintiffs seek class-wide declaratory and injunctive relief under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs seek a declaration that DEA's policy or practice violates the Fourth Amendment. Plaintiffs accordingly seek an injunction prohibiting DEA from seizing luggage or currency at any airport in the United States in the absence of articulable circumstances demonstrating probable cause, which must be more than the mere presence of currency itself.

107. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual challenges to DEA's unconstitutional policy or practice will, by their nature, often become moot by the return of property, and in any event the costs associated with bringing individual challenges are often

prohibitive of a full and fair process for vindicating individuals' constitutional rights. A class action will allow for effective, class-wide relief to remedy this ongoing and repeated violation of the Fourth Amendment.

108. Plaintiffs propose the following class definition for the "DEA Class": "All air travelers who, from January 15, 2014, until the present, either had or will have their currency seized by DEA at a U.S. airport because they were or are traveling with at least $5,000 in currency, pursuant to DEA's policy or practice of making such seizures regardless of whether there is probable cause for the seizure."

109. This action meets all the Rule 23(a) prerequisites for maintaining a class action.

110. Numerosity under Rule 23(a)(1): The putative class is so numerous that joinder of all members is impracticable.

   a. Upon information and belief, DEA regularly seizes currency from travelers at U.S. airports.

   b. For example, from 2006-2016, DEA seized more than $200 million in currency from at least 5,200 people at the nation's 15 busiest airports.

   c. Upon information and belief, many DEA seizures of currency at airports are based on information from TSA Screeners that the travelers possessed a "large" amount of currency on their person or in their carry-on luggage.

   d. Upon information and belief, many of these seizures were based on travelers possessing more than DEA's $5,000 threshold for seizing currency from travelers at airports regardless of whether there was probable cause for the seizure.

   e. Upon information and belief, the number of current and future class members is in the thousands.

   f. Upon information and belief, the members of the proposed class are dispersed across the United States, with many living far from the location where DEA seized their currency.

111. Commonality under Rule 23(a)(2): This action presents questions of law and fact common to the putative class, resolution of which will not require individualized determinations of the circumstances of any particular plaintiff. Common questions include, but are not limited to

   a. Does DEA frequently conduct seizures of currency from travelers at airports based on information from TSA Screeners that the travelers possessed a "large" amount of currency on their person or in their carry-on luggage?

   b. Does DEA have a policy or practice of seizing currency from travelers at airports because the currency exceeds a particular threshold amount (such as $5,000) that DEA deems "suspicious," regardless of whether there is probable cause for the seizure?

   c. Does an air traveler's possession of $5,000 or more in currency, by itself, constitute reasonable suspicion or probable cause?

   d. Does DEA's policy or practice violate the Fourth Amendment?

112. Typicality under Rule 23(a)(3): The Named Plaintiffs' claims seeking declaratory and injunctive relief are typical of the claims of the putative class.

   a. The Named Plaintiffs' claim regarding DEA's unconstitutional policy or practice affects the other members of the class.

   b. The Named Plaintiffs seek the same class relief for themselves and other members of the class:

      i. a declaration that DEA's airport currency seizure policy or practice violates the Fourth Amendment; and

      ii. an injunction prohibiting DEA from seizing currency from travelers at airports because it exceeds a particular currency threshold, regardless of whether there is probable cause for the seizure.

113. Adequacy of Representation under Rule 23(a)(4): The interests of the putative class are fairly and adequately protected by the Named Plaintiffs and their attorneys.

    a. The Named Plaintiffs adequately represent the putative class because their interests are aligned with the class's and there are no conflicts of interest between the Named Plaintiffs and members of the putative class.

    b. The Named Plaintiffs and the putative class members are ably represented by the Law Office of Robert P. Coutts.

114. This action also meets the requirements of, and is brought in accordance with, Federal Rule of Civil Procedure 23(b)(2). DEA has acted, or refused to act, on grounds generally applicable to the class.
Final declaratory and injunctive relief is appropriate with respect to all of the members of the class.

115. Finally, this action is a Rule 23(b)(2) action where the putative class is only seeking declaratory and injunctive relief, and thus is not required to satisfy the ascertainability requirement. See Shelton v. Bledsoe, 775 F.3d 554, 563 (3d Cir. 2015). However, even if the ascertainability requirement applied, the members of the class are ascertainable because DEA maintains records of its currency seizures and forfeitures. Class Claims Count I Class Claim for Ultra Vires Agency Action Under 5 U.S.C. §§ 701-706

116. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in preceding paragraph 1 through 115.

117. Plaintiffs bring this claim against DEA, DEA Acting Administrator Cole in his official capacity, and the United States of America under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 and the Fourth Amendment to the United States Constitution.

118. Plaintiffs bring this claim on behalf of themselves and the DEA Class under Federal Rule of Civil Procedure 23(b)(2) for declaratory and injunctive relief against DEA, DEA Acting Administrator Dhillon in his official capacity, and the United States of

America for violation of their Fourth Amendment right to be free from unreasonable searches and seizures.

119. It is legal to travel with any amount of currency, and there are no legal requirements to report to the government that one is traveling domestically with any amount of currency.

120. An air traveler's possession of any amount of currency, by itself, is not suspicious or indicative of criminal activity; it does not give rise to reasonable suspicion or probable cause.

121. DEA follows a policy or practice of seizing currency from travelers at U.S. airports without probable cause based solely on the presence of the currency itself.

122. DEA follows a policy or practice of seizing currency from travelers at U.S. airports based on the presence of a threshold amount of currency that DEA considers "suspicious," regardless of whether there is probable cause for the seizure.

123. DEA follows a policy or practice of seizing currency from travelers at U.S. airports based solely on whether they have at least $5,000 in currency, regardless of whether there is probable cause for the seizure.

124. DEA's policy or practice violates the Fourth Amendment right to be free from unreasonable searches and seizures.

125. Pursuant to this unconstitutional policy or practice, DEA seized Terry's and Rebecca's cash without probable cause.

126. As a direct and proximate result of DEA's policy or practice, the Named Plaintiffs and other members of the DEA Class have suffered or will suffer the same injury, including the deprivation of their constitutional rights and the deprivation and/or loss of their currency.

127. DEA's unconstitutional policy or practice affects every member of the DEA Class— i.e., every instance in which DEA seizes currency from a traveler at a U.S. airport

because they were or are traveling with at least $5,000 in currency, regardless of whether there is probable cause for the seizure.

128. Therefore, class-wide declaratory and injunctive relief is necessary to remedy DEA's unlawful policy or practice, which will otherwise continue. Individual Claims Count IV Individual Claim Under Federal Rule of Criminal Procedure 41(g) and 28 U.S.C. § 1331 for Return of Plaintiffs' Property Currently Held in Violation of the Fourth Amendment (Against DEA, DEA Acting Administrator Cole in his official capacity, and the United States of America)

129. The Named Plaintiffs re-allege and incorporate by reference each and every allegation set forth in preceding paragraphs 1-128.

130. The Named Plaintiffs bring this claim for the return of their seized cash (or an equivalent amount in U.S. currency) against DEA, DEA Acting Administrator Cole in his official capacity, and the United States of America under Federal Rule of Criminal Procedure 41(g), this Court's general equity jurisdiction under 28 U.S.C. § 1331, and the Fourth Amendment to the United States Constitution.

131. Mr. Cox, Mr. Redmon and Mr. Abraham are aggrieved, injured, and harmed by the unlawful and unconstitutional seizure of their property—the seized cash—and by the continued deprivation of that property.

132. DEA's seizure and continued retention of Plaintiffs' cash violated and continues to violate the Fourth Amendment because the warrantless seizure and retention were and remain without probable cause to believe that Plaintiffs engaged in any criminal activity, or that the cash was connected to any criminal activity, and no exception to the warrant requirement applied or applies to the initial seizure or the retention of the seized cash.

133. Plaintiffs are entitled to the immediate return of their cash (or an equivalent amount in U.S. currency) in the amount of $52,492., plus interest.

### Individual Claim for Compensatory Damages Under the Fourth Amendment against DEA AGENTS

134. The Named Plaintiffs re-allege and incorporate by reference each and every allegation set forth in preceding paragraphs 1-133.

135. The Named Plaintiffs bring this claim for compensatory damages against Defendant DEA AGENT JANOWICZ and DEA AGENT SCIRRI, under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and the Fourth Amendment to the United States Constitution.

136. DEA AGENT JANOWICZ AND DEA AGENT SCIRRI violated Plaintiffs' clearly established Fourth Amendment right to be free from unreasonable searches and seizures by seizing their cash without a warrant or probable cause.

137. As a direct and proximate result of DEA AGENT JANOWICZ and DEA AGENT SCIRRI's unconstitutional actions, Plaintiffs have suffered injuries, as set forth in the preceding paragraphs—particularly the section entitled "Individual Injuries to the Named Plaintiffs"—and as may further be developed in discovery or at trial.

138. An award of compensatory damages plus interest—in amounts to be determined in discovery or at trial—is necessary to remedy the injuries caused by DEA Agent Janowicz and Agent Scirri's violation of Plaintiffs' Fourth Amendment rights.

### Request for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Certify the DEA Class under Federal Rule of Civil Procedure 23(b)(2) consisting of: "All air travelers who, from January 15, 2014, until the present, either had or will have their currency seized by DEA at a U.S. airport because they were or are traveling with at least $5,000 in currency, pursuant to DEA's policy or practice of making such

seizures regardless of whether there is probable cause for the seizure."

B. Issue class-wide declaratory relief against Defendants DEA, DEA Administrator Cole in his official capacity, and the United States of America declaring unconstitutional under the Fourth Amendment DEA's policy or practice of seizing air travelers' currency at U.S. airports because they are traveling with currency in excess of $5,000 (or any other threshold amount of currency), regardless of whether there is probable cause for the seizure.

C. Issue class-wide injunctive relief against Defendants DEA, DEA Administrator Cole in his official capacity, and the United States of America enjoining DEA from seizing air travelers' currency at U.S. airports because they are traveling with currency in excess of $5,000 (or any other threshold amount of currency), regardless of whether there is probable cause for the seizure.

D. Order Defendants DEA, DEA Administrator Cole, and the United States of America to immediately return Mr. Cox, Mr. Redmon and Mr. Abraham's cash (or an equivalent amount in U.S. currency) in the amount of $52,492.00, plus interest.

E. Award Plaintiffs Aaron Cox and Antwon Redmon compensatory damages plus interest—in an amount to be proven in discovery or at trial—against Defendant DEA Agent Janowicz and Agent Scirri for their violations of Aaron Cox and Antwon Redmon's Fourth Amendment rights.

F. Enter an award against all Defendants allowing Plaintiffs to recover their attorney fees, costs, and expenses in this action under 28 U.S.C. § 2412 and any other applicable provisions of law or equity.

G. Award any further equitable or legal relief the Court may deem just and proper.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues so triable.

Dated:

Respectfully submitted,

/s/Robert P. Coutts
Robert P. Coutts
Attorneys for Plaintiffs
Park Place Office Center
7445 Allen Road, Suite 118
Allen Park MI 48101
313-381-1440